# SUPREME COURT OF NEBRASKA.

4 179
5 329
6 155

## JULY TERM, 1875.

PRESENT:

HON. GEORGE B. LAKE, CHIEF JUSTICE.
   "   DANIEL GANTT,     } ASSOCIATE JUSTICES.
   "   SAMUEL MAXWELL, }

---

J. H. LACEY, PLAINTIFF IN ERROR, v. CENTRAL NATIONAL
BANK OF OMAHA, DEFENDANT IN ERROR.

1. **Witnesses:** STATING OPINIONS OR FACTS. A witness testifying must state facts. His understanding of the purpose and object of a transaction is not evidence.

2. **Promissory note:** DEFENSE: EVIDENCE. The defense to an action upon a promissory note being that the note had been given to cover an overdraft by a depositor in a National Bank, *it was held:* 1. That testimony of one of the makers, as to his understanding of the purpose and object of giving the note, was inadmissible. 2. That demand for security for the overdraft of such depositor, made long after the note was given and when there was an overdraft to a large amount still due, constituted no part of the *res gestae.*

3.  ———: ACTION UPON. The right to sue upon a note executed exclu-
sively for the benefit of a banking corporation, vests in the bank, and the
indorsement of its cashier, to whom as cashier, such note is made pay-
able, is not necessary.

ERROR to the district court of Douglas County.

THE defendant in error brought action upon a promis-
sory note, made by J. C. Mackoy & Co., J. H. Lacey,
and J. M. Mackoy, to James W. Watson cashier, and
alleged that the note was executed and delivered to and
for the use and benefit of the bank. The answer admit-
ted the execution of the note, but alleged that the note
was given merely to cover an overdraft of Mackoy & Co.
of their deposit in the bank, during an examination of
the bank by a United States examiner, and not for the
purpose of securing such overdraft, or for payment; and
also that other persons were to sign the note with Lacey.
Upon the trial, the deposition of J. C. Mackoy was
offered in evidence, on behalf of Lacey, and objection
being made to the admission of the following questions
and answers, the court sustained the objection, and
refused to permit said questions and answers to be read
to the jury:

"*Ques.* 6.   Was anything said about the note being
security at that time?

*Ans.*   No, nothing was said about the note being
security for the overdraft. It was understood between
the cashier and myself that the note was given for the
purpose of satisfying the bank examiner, and that the
note was not to be enforced against the signers of said
note.

*Ques.* 7.   State whether or not you made the under-
standing known to the defendant Lacey, at the time you
applied to him for his signature?

*Ans.*   I did.

*Ques.* 8.   At the time of your application to defend-

ant Lacey did you mention to him the name of any other person or persons who were to sign the note with him, and if so, whose?

*Ans.* I did. I mentioned to him James M. Mackoy.

*Ques.* 9. State whether or not there was any understanding or agreement that the note in suit was to be collected against either or any of the makers?

*Ans.* It was the understanding between us and the plaintiff that it was not to be collected of the makers of said note. The understanding was that it was to be left there merely for the inspection of said bank examiner, and that was the only reason that the note was given.

*Ques.* 10. At what time if ever did plaintiff ask or demand security for the overdraft of your firm?

*Ans.* I think it was sometime during the Christmas of 1868, and subsequent to the time of giving the note."

The jury returned a verdict for the bank upon which judgment being rendered, Lacey brought the cause here by petition in error, and it was submitted to this court upon printed briefs.

*E. Wakeley*, for plaintiff in error.

I. The promise was to pay to the cashier. If this was for the use and benefit of the bank, as alleged, the cashier was the trustee, and should have brought the action. No facts are alleged showing that the bank was the owner. *Raymond v. Pritchard*, 24 *Ind.*, 318. *Hereth v. Smith*, 33 *Ind.*, 514.

II. The defense was, a want of consideration. The answer averred that the note was given for the accommodation of the bank; that the bank examiner was about to visit the institution, and the officers wanted the note to exhibit to him; that it was expressly understood that the note was to be used only for that purpose, and was not to be paid. If the testimony, which was excluded,

tended to establish the defense, it should have been received and submitted to the jury. The note was given for a particular purpose. The bank had no right to use it for any other. Having obtained it upon the representation that it was to be used only to show to the examiner, it was a fraud on Lacey (as well as Mackoy) to undertake to hold it as security for the overdraft. The proposition rests upon general principles. *Dennistan v. Bacon*, 10 *Johns.*, 198. *Shelding v. Haight*, 15 *Id.*, 270. *Vallet v. Parker*, 6 *Wend.*, 615. *Kesson v. Smith*, 8 *Id.*, 437. *Stevens v. Parker*, 5 *Allen*, 333. *Shade v. Hood*, 13 *Gray*, 97. *Small v. Smith*, 1 *Den.*, 583. *Hill v. Ely*, 5 *Sergt. & R.*, 363. *Miller v. Henderson*, 10 *Id.*, 290. *Armstrong v. Cook*, 30 *Ind.*, 22.

*Carrigan & Osborn*, and *John D. Howe*, for defendant in error.

I. The rule that parol contemporaneous agreements are wholly inadmissible to alter, vary, or add to a written contract, admits of no exception, and it is equally well established, that it is wholly inadmissible to show that it was agreed that there should be no liability upon the note. 2 *Parson Notes and Bills*, 501. 1 *Greenleaf Evidence*, § 275–383. *Gridley v. Dole*, 4 *New York*, 486. *Thompson v. Ketchum*, 8 *Johns.*, 190. *Bank of the United States v. Dana*, 6 *Pet.*, 59. *More v. Willis*, 13 *Ohio*, 26. *Ely v. Kilbourn*, 5 *Denio*, 514. *Ervin v. Saunders*, 1 *Cow.*, 549. *Hanson v. Stetson*, 5 *Pick.*, 506. *Bentley v. Bradley*, 8 *Vermont*, 243. *Isaacs v. Elkins*, 11 *Id.*, 679. *Molls v. Bird*, 11 *Mass.*, 501.

II. As to the questions and answers, the answer wherein Mackoy states what was "understood" between him and the cashier, is a conclusion of fact, Lacey was not present, and there was no defense in the answer to which the fact could be relevant.

GANTT, J.

As is clearly shown by the record the only exceptions taken by the plaintiff on the trial of the cause in the court below, was to the ruling of the court upon refusing to allow portions of the deposition of J. C. Mackoy to be read in evidence.

In answer to the sixth question, the witness states what was "understood" as the purpose and object of giving the note, and in answer to the ninth question he again states the "understanding" in respect to the giving of the note, and the seventh question was an inquiry as to whether or not this "understanding was known to Lacey." Hence, in answer to all these questions, the witness does not state what was said by himself or the cashier of the bank; he does not state the terms or conditions of any agreement or contract between the cashier and himself in regard to the purpose for which the note was given, or whether there was such contract—he does not state a single fact in regard to the matter; he simply and only speaks of his understanding of the matter, and this is no more than his mental conclusion, deduced from his interview with the cashier of the bank. In legal parlance, this understanding of the witness may be defined to be the faculty of the human mind, by which it receives or comprehends the ideas which others express and intend to communicate. And the expression of ideas of one person may and most usually will, in some material points, impress the minds of others with different conclusions. Therefore, such deduction, however logical in order and truthful in substance the witness may consider the same to be, yet, I think it would be very unsafe to permit a jury to predicate a verdict on such testimony. It is a principle well founded in reason, and the philosophy of moral evidence, that the witness testifying must state facts, and not deductions or con-

clusions. Would not the admission of such testimony be an unsafe departure from the fundamental principles of the laws of evidence, dangerous in its consequences? And might it not be productive of great injustice in the legal adjustment of controversies between individuals? It surely would establish a rule which does not seek after facts, but simply the understanding of the witness. I think the testimony was inadmissible, and therefore properly rejected.

The eighth question was an inquiry as to whether the witness mentioned to Lacey the names of any other persons who were to sign the note with him, and if so, who. The answer is that he mentioned the name of J. M. Mackoy, who did sign the note, and hence the question and answer were wholly immaterial; but at any rate, the answer could not be used as evidence against the bank, for the reason that the bank was not present at the time, and had no knowledge in regard to the matter.

The answer to the tenth question is irrelevant and was properly rejected, because it was a demand for security for an overdraft of the firm of Mackoy & Co., made long after the note was given, and when there was an overdraft of this firm to a large amount still due to the defendant in error.

But it is contended by the counsel for plaintiff in error, that the note was made to James W. Watson, cashier, and not to the bank corporation, and, therefore, the action cannot be maintained by the defendant in error, without the indorsement of the note by James W. Watson. In answer to this argument it might be sufficient to state that the record shows no exception taken by the plaintiff in error to the introduction of the note in evidence on the trial. Hence, any objection which might have been made to the note was waived.

But suppose the exception had been properly taken, then, it need only be observed that upon a careful reading of the answer, and the evidence admitted, as well as the petition, it clearly appears that the note was given exclusively for the benefit of the defendant in error; and this fact was well known at the time the note was given, for J. C. Mackoy, who attended to the matter says in his deposition that "James W. Watson, the cashier, asked him to give a note for five thousand dollars, with two other names besides the firm name of J. C. Mackoy & Co.; he stated a bank examiner was expected very soon, and he wanted the note to account for any overdraft." Therefore, under the nature and circumstances of the transaction I think in contemplation of law as well as in fact, the note was the property of the defendant in error, and under our practice act, which requires the action to be prosecuted in the name of the real party in interest, the right of action to sue on the note vested only in the defendant in error. In the case of *Babcock v. Beman*, 1 *New York*, 200, the action was on a note payable to the order of "R. B. Treas." executed by "A. S. & Co., and indorsed "R. B. Treasurer." The complaint set forth facts necessary to charge the defendant personally as indorsee; the answer alleged that the defendant was the treasurer of an incorporated manufacturing company, etc. The court says that "it has been held that the indorsement of a note to the cashier of a monied corporation, by adding the word cashier to his name in the indorsement, is a transfer to the corporation, where that was the design of the corporation. *Watervliet v. White*, 1 *Denio*, 608. So the note before the indorsement may be considered as having been the property of the manufacturing corporation, it being substantially averred that such was the nature of the transaction upon which it was given." It was therefore held that "R. B. Treas." was not personally liable as indorsee.

*Brockaway v. Allen*, 17 *Wend.*, 41.   *Hick v. Hinde*, 9 *Barb.*, 528.

JUDGMENT AFFIRMED.

MAXWELL, J, concurred.   LAKE, Ch. J, did not sit..